Joshua Wilkinson et ux. v. Paul Lieberman et ux., Appellants. —37 S. W. (2d) 533.

Division One, March 31, 1931.

*Andrew D. Gresham* and *Walter J. Gresham* for appellants.

*James H. Hull* for respondents.

FERGUSON, C.—Plaintiffs, husband and wife, sue in ejectment for possession of a strip of land described as being "about 23/100 of an acre of land, 47 links in width and 5 chains in length and lying and being east of the public road in the southwest quarter of the southeast quarter of Section 36, Township 53, Range 34" in Platte County, Missouri.

The answer of defendants, who are husband and wife, is a general denial; adverse possession "of the land claimed by plaintiffs for more than thirty years;" an agreed line and estoppel. By way of estoppel, defendants allege: "that defendants, being in possession of said land under claim of title, which plaintiffs well knew, proceeded to improve said land and to build thereon permanent improvements; that plaintiffs knew that all of this was being done, and never at any time prior to July, 1927, raised any question as to defendants' ownership of said land or right to possession thereto, but remained silent and allowed defendants to expend much time and money in making improvements and erecting buildings thereon."

A trial was had before a jury. The court refused defendants' instructions on adverse possession and agreed line, and of its own motion gave an instruction submitting the question of estoppel. The instruction advised the jury that record title to the land in controversy was in plaintiffs and that the defendants had no record title thereto and that the finding should be for the plaintiffs unless the jury should "find and believe from the evidence that defendants were in possession of said premises under an honest belief that they were the true owners thereof, and that plaintiffs, knowing that defendants were in possession of said premises under such belief that they were the true owners thereof, and with knowledge that the defendants were not true owners thereof, stood silent and allowed defendants to make valuable improvements on said premises, with knowledge that such improvements were being made by defendants, and without objecting thereto or giving defendants any notice that plaintiffs claimed to own said premises," in which event the verdict should be for defendants.

The plaintiffs did not object or except to the giving of said instruction by the court of its own motion. The question of estoppel was the only issue submitted and the jury returned a verdict for the defendants. The court sustained plaintiffs' motion for a new trial and specified as the ground therefor "that there is no evi-

dence to support the defense of estoppel.'' Defendants appealed and the appeal was granted to this court.

The testimony shows that more than forty years before this controversy arose a public road was established and opened between the southwest quarter of the southeast quarter and the southeast quarter of the southwest quarter of said Section 36, Township 53, Range 34. This road ran from north to south along and upon the quarter section line to a point near a rocky bluff about five chains north of the south line of the section. To avoid construction across this bluff the road was curved to the west and again southward in the southeast quarter of the southwest quarter of· said section and continues to an intersection with a road along the south line of the section. This curve in the road left an irregularly shaped tract of land containing about one and one-half acres south and east of the road in the southeast corner of said southeast quarter of the southwest quarter. At the time the road was opened and until June 24, 1924, James Morton owned all of the said southeast quarter of the southwest quarter, but on that date he conveyed the small tract south and east of the road to appellants. The land was described in the deed as ''a tract of land containing about one and one-half acres lying east of the public road in the southeast corner of the southwest quarter of Section 36, Township 53, Range 34 in Platte County, Missouri.'' During all this time one Price owned the southwest quarter of the southeast quarter, the 40 acres adjoining the Morton land on the east. At the time Morton acquired his land, a fence ran in a general northerly and southerly direction from somewhere near the bluff to the south line of the section. It seems that from shortly after the construction of the road and to the time Morton conveyed the small tract to appellants, the fence was not maintained by anyone, nor kept in repair and intact. After the conveyance to appellants the fence was repaired. However, no fence was at any time built on or across the bluff. Morton testified that he never claimed the fence as a line; that the fence was there and he let it remain and that he never claimed any farther east than ''the property line between my land and the Price farm.''

In 1924 appellants built a small two-room dwelling house on the bluff near the point where the road curves toward the west and in the same year built a chicken house south and east of the dwelling. Respondents testified that they were not acquainted with the Price land until 1925 when they purchased the southwest quarter of the southeast quarter from Price. This conveyance was dated and placed of record as of January 7, 1925, and respondents moved onto the farm ''in the Spring of 1926.'' Respondent Joshua Wilkinson testified that about a year after he got his deed he ''drawed

an idea" that appellants were on his land, but that he.did not know where the corner was; that he could not locate the cornerstone and that he did not know where the line ran until it was finally located by a survey m!ade at his direction in 1927 shortly before the filing of this action. In 1926 appellants added another room to the dwelling house at a cost of $30. In 1927 appellants made some repairs on the chicken house, and about the time these repairs were completed respondent Joshua Wilkinson told appellants that since some brush had been cleared away near the south line of the section he thought he.had found the cornerstone and from the view he was then able to obtain of the road he believed appellants were on his land. To this time, there had been no conversation, discussion, claims or statements between appellants and respondents or. so far as the testimony shows, no statements or claims made by either of them to any other person about the location of the line between their lands. Immediately after the foregoing statement by Wilkinson to appellants, he caused a survey to be made, the correctness of which is not disputed. The survey revealed that appellants' dwelling house and chicken house were on the southwest quarter of the southeast quarter, to which respondents have unquestioned record title. Thereupon, respondents notified appellants to remove the buildings, which appellants refused to do, and this action was then instituted. Further reference will be made to the testimony in the course of the opinion.

Appellants say that since respondents did not object and except to the instruction given by the court of its own motion submitting the defense of estoppel, they thereby acquiesced in the instruction as a correct statement of the law under the testimony and are bound by the verdict rendered on the issue so submitted. Had there been sufficient evidence to require and justify the submission of the case on the theory of estoppel and the court erroneously stated the law thereof in the instruction, the trial court would not have been warranted in granting a new trial on the ground that the instruction was erroneous since respondents failed to object and except thereto at the time. Or. if the trial court had refused a new trial and plaintiffs (respondents) had appealed, the instruction could not be considered and objections thereto and the giving thereof reviewed in this court. [Kolokas v. Railroad. 223 Mo. 455, 122 S. W. 1082: Green v. Terminal Railroad Assn.. 211 Mo. 18, 109 S. W. 715; Empire Building Co. v. Hopkins, 204 Mo. 643, 103 S. W. 66.] But here the trial court ordered a new trial and specified as ground therefor that there is "no evidence to support the defense of estoppel." At the close of all the testimony, the plaintiffs requested the court to instruct the jury "that under the law and evidence" the finding must be for plaintiffs, duly objected and excepted

to the refusal of same and in their motion for a new trial assigned as error the action of the trial court thereon. In granting the new trial the trial court, in effect, ruled that plaintiffs' peremptory instruction should have been given and that the court erred in submitting the defense of estoppel under the evidence. If there is no substantial or sufficient evidence in the record to support the defense of estoppel, the action of the trial court in granting a new trial must be sustained.

The defense of estoppel is not well pleaded in that certain essential elements of equitable estoppel are not alleged, but since no objection was made to the pleading by demurrer or otherwise, and evidence was received thereunder without objection, we will consider and examine the evidence to determine whether there is any substantial evidence to support the theory of estoppel. [Grafeman Dairy Co. v. Northwestern Bank, 288 S. W. 359; Olden v. Hendrick, 100 Mo. 533, 13 S. W. 821.] Referring to a plat introduced in evidence showing the section and quarter section lines and the road and buildings, we note that appellants' dwelling house, built in 1924, is located at the south end of the straight line of road between the southeast quarter of the southwest quarter and the southwest quarter of the southeast quarter at the point where the road curves toward the west. The quarter section line is approximately the center line of the road to that point, yet the dwelling is located to the east of the quarter section line and the center line of the road, while the chicken house built in the same year is located south of the dwelling house and farther to the east, and both buildings are located on the southwest quarter of the southeast quarter.

Appellants made these original and major improvements before respondents were so much as acquainted with the southwest quarter of the southeast quarter, which they subsequently purchased in the year 1925. Apparently appellants, acting in ignorance of the location of the quarter section line, inadvertently erected these buildings east thereof despite the fact that the location of the road might well have served to put them on inquiry. In erecting the buildings they acted solely upon their own judgment and do not claim that they were at that time in any manner misled by anyone. Afterwards, and in the year 1925, respondents purchased the southwest quarter of the southeast quarter and their deed was placed of record, and in 1926 they moved upon the land. Respondents did not know the exact location of the quarter section line and did not ascertain same until the discovery in 1927 of what they took to be the cornerstone and the survey which they immediately caused to be made. No act on the part of respondents whereby appellants were misled or upon which they relied is charged or shown and it is charged merely that respondents were silent. All the parties

seemed to have been ignorant of the exact location of the quarter section line, and it clearly appears that in that respect they stood upon a parity with equal means of knowledge. Where parties have equal means of knowledge, there is no estoppel in favor of either. [Bales v. Perry, 51 Mo. 449; Mueller v. Kaessmann, 84 Mo. 318; Blodgett v. Perry, 97 Mo. 263, 10 S. W. 990; Laughlin v. Wells, 283 S. W. 990; Wood v. Oil Co., 220 Mo. App. 1004, 274 S. W. 894; Harris v. Investment Co., 25 S. W. 484.]

"Mere silence of itself will not raise an estoppel. To make the silence of a party operate as an estoppel the circumstances must have been such as to render it his duty to speak, and there must also be an opportunity to speak. And it is essential that he should have had knowledge of the facts, and that the adverse party should have been ignorant of the truth, and have been misled into doing that which he would not have done but for such silence." [21 C. J. 1151 and cases there cited.] While silence, which amounts to concealment or implied misrepresentation of the true facts whereby another is caused to act to his prejudice or to change his position for the worse may give rise to estoppel yet silence without knowledge will not work an estoppel (Burke v. Adams, 80 Mo. 504; Cannon v. Gibson, 162 Mo. App. 386, 142 S. W. 730) and the conduct of the person alleged to be estopped, must be viewed in the light of the understanding he had of his rights at the time the one seeking to invoke estoppel acted and not in the light of what may thereafter be learned, or as such rights may thereafter be determined. [21 C. J. 1151, 1152.]

When appellants added a room to the dwelling house in 1926 and made repairs on the chicken house in 1927, neither appellants nor respondents were informed or aware of the location of the quarter section line between their lands. Their respective deeds were of record whereby each had notice of the other's title. Respondents' silence under such circumstances cannot be construed as amounting to concealment and it is apparent that when appellants made the improvements in 1926 and 1927 they acted upon their own judgment, as they had in 1924 when the buildings were originally constructed, and that they had the same means of knowledge concerning the location of said line as respondents. It is an essential element of equitable estoppel that the person asserting the estoppel shall have done or omitted some act or changed his position in reliance upon representation or conduct of the person sought to be estopped. Such element does not exist in this case. Essential elements of an equitable estoppel being absent, the action of the trial court in granting a new trial must be affirmed.

Appellants say that no verdict for respondents or judgment thereon could be allowed to stand if respondents prevail, because the

petition does not definitely fix and locate the 23/100 of an acre of land,' 47 links in width and 5 chains in length in the southwest quarter of the southeast quarter, and that the description as thus set out in the petition does not identify any particular tract of land in said forty acres and would apply to any 23/100 of an acre of land of the same measurements in the said forty acres.

The verdict and judgment in an ejectment action should conform to and follow the description of the land set out in the petition. All the testimony in the case however relates to, the plat introduced into evidence shows and the surveyor testified, that the strip of land in question is located in the southwest corner of the southwest quarter of the southeast quarter, and a description of the land as about 23/100 of an acre of land, 47 links in width and 5 chains in length in the southwest corner of the southwest quarter of the southeast quarter of said section, or as being about 23/100 of an acre of land 47 links in width and 5 chains in length in the southwest corner of the southeast quarter of said section, would seem to be sufficiently accurate.

Upon another trial respondents may amend their petition in that respect if they see fit to do so.

The order of the trial court granting a new trial is affirmed, and it is so ordered. *Seddon* and *Sturgis, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All of the judges concur.